In re Gregory J. SMITH and Deborah K. Smith, Debtors,

Theresa F. Wilson, individually and as Trustee of The Wilson 1992 Trust, dated August 7, 1992: Karen M. Judson, Individually and as Trustee of The Wilson 1992 Trust, dated August 7, 1992, and as Trustee of the Karen Mary Judson Separate Property Trust, dated June 7, 2001, Plaintiffs,

v.

Gregory J. Smith and Deborah K. Smith, Defendants.

Bankruptcy No. 9:03–bk–13500–ALP.
Adversary No. 04–00003.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

March 3, 2005.

Edward R. Miller, Miller and Hollander, Naples, FL, for Debtor.

### FINDING OF FACTS, CONCLUSION OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 13 case of Gregory J. Smith and his wife, Deborah K. Smith (the "Debtors"), is a Complaint to Estimate the Claims of Theresa F. Wilson ("Ms. Wilson"), individually and as Trustee of the Wilson 1992 Trust and her daughter, Karen M. Judson ("Ms. Judson"), individually and as Trustee of the Wilson 1992 Trust and as Trustee of The Karen Mary Judson Separate Property Trust dated June 7, 2001. Ms. Wilson and Ms. Judson filed a Proof of Claim in the Debtors' Chapter 13 case in the amount of $700,000, which according to Schedule 1 of the Proof of Claim is composed of the following:

| | |
|---|---|
| Compensatory damages, actual loss | $400,000 |
| Interest for 4 years to Nov. 2003 | |
| (10%/yr., California Statute) | $160,000 |
| Recoverable cost, anticipated | $ 40,000 |
| Attorney Fees (4th Cause of Action | |
| Elder Abuse). | $100,000 |

Although the Proof of Claim filed by the Plaintiffs fails to state that the claim is an unliquidated claim, there is no question that the claim is, in fact, unsecured and unliquidated. The matter under consideration has its genesis in claims asserted by the Claimants, residents of California, in a lawsuit filed by them against the Debtors, among others, originally in the Superior Court of California, County of San Diego, East County Division on August 15, 2002.

In the original Complaint in California, the Plaintiffs set forth seven causes of action which are as follows:

First Cause of Action: Professional Negligence

Second Cause of Action: Breach of Fiduciary Duty, Constructive Fraud

Third Cause of Action: Violation of the California Corporate Securities Law of 1968

Fourth Cause of Action: Violation of the California Elder Abuse Act

Fifth Cause of Action: Violation of the Investment Advisors Act of 1940

Sixth Cause of Action: Fraud

Seventh Cause of Action: Negligent Misrepresentations

The litigation in California never reached the trial stage and, of course, came to a halt when the Debtors file their Petition for Relief under Chapter 13 in this Court on June 30, 2003.

Although, the matter under consideration is ordinarily treated under Section 9014 of the Federal Rules of Bankruptcy Procedure as a contested matter, this Rule also authorizes the Court to make use of some or all provisions of Part VII. Based on this provision, this Court ordered that the Claimants should commence an adversary proceeding in order to resolve the Motion to Estimate Claim.

On December 6, 2003, the Claimants filed their Complaint setting forth seven separate Causes of Action, which this Court is treating as seven separate Counts that are virtually identical to the claims asserted by the Claimants in the California law suit.

At the final evidentiary hearing the following relevant facts were established as to whether the claim of the Plaintiffs is allowable and, if allowable, the amount. The facts are as follows.

On January 30, 1992, Ms. Wilson's husband died unexpectedly. Several months after his death, Ms. Wilson retained a local attorney to create a trust naming her daughter as the beneficiary of the trust (The Wilson 1992 Trust). At that time, Ms. Wilson owned Certificate of Deposit's ("CD's"), Individual Retirement Accounts ("IRA"), and Checking accounts with a total value of $301,978.64. Of that money, $166,010.46 was in an IRA retirement account handled by Dean Witter. All the investments of Ms. Wilson were very conservative and very low risk and, consequently, produced very modest returns.

Ms. Judson lived with her mother, Ms. Wilson, and shared all living expenses with her mother. Ms. Judson owned an Individual Retirement Account with $99,174.93.

In March 1998, Ms. Wilson's account executive at Dean Witter notified her that he would not be handling her account any more because Dean Witter gave him a promotion. After this conversation, Ms. Wilson decided she needed to get someone to give her financial advice. One of Ms. Wilson's neighbors recommended Gregory Smith ("Mr. Smith") as someone who had given them financial advice in the past. At the request of Ms. Wilson, the neighbors

called Mr. Smith, and told him to contact Ms. Wilson. Mr. Smith called Ms. Wilson and set up an assessment with her.

They met at the appointment time. Ms. Judson also participated in the discussion. The record shows that Ms. Wilson and Ms. Judson's assets were in accounts with very low risk and with modest returns. At this meeting, Mr. Smith recommended that they take all of their investments and purchase annuities from the IL Annuity and Life Insurance Company, which Smith represented. The IL Annuity made monthly payments of $500. Although Ms. Wilson would be incurring some penalties for early withdrawal from her current CD's investments, Mr. Smith convinced Ms. Wilson that they would make up that loss through the new investment.

Approximately in August, 1998, Ms. Wilson contacted Mr. Smith because she was interested in purchasing long-term care insurance. Mr. Smith recommended Ms. Wilson purchase a policy from American Travelers. In April 1999, Mr. Smith recommended Ms. Wilson to switch her insurance policy to Bankers United because Mr. Smith believed it was a better fit for her. Ms. Wilson agreed to switch her long term insurance. At a later point in time, Ms. Judson also purchased the same policy.

On November 1999, Mr. Smith met with Ms. Wilson and Ms. Judson again and suggested the possibility of investing in Alpha Telecom/ATC ("ATC"). The parties are in disagreement as to how the idea to switch investments began, but this Court is satisfied that prior to this, neither Ms. Wilson nor Ms. Judson had ever heard of ATC. Mr. Smith claims that either Ms. Wilson or Ms. Judson expressed the need for a higher monthly income than what they were receiving from the IL Annuity.

Ms. Wilson and Ms. Judson claim that Mr. Smith initiated the discussion and that they were satisfied with their current investments. During this meeting, Mr. Smith presented the ATC investment as a way for Ms. Wilson and Ms. Judson to increase their monthly income. The investment called for the investor to purchase pay phones that would be placed on the East Coast. The phones were supposed to have a minimum monthly return of $58.34. (Tr., Vol. I.P. 2–14; Vol. VI. P. 13–20) [1]

Mr. Smith claims to have gotten the information on the opportunity from his broker dealer Mike Catania ("Mr. Catania"). Mr. Smith claims that Mr. Catania had previously investigated the deal through his Certified Public Accountant ("CPA") and determined it was not a security. In addition, Mr. Smith claims that he also made some phone calls to other investors and to the company itself.

Ms. Wilson and Ms. Judson claimed that Mr. Smith told them that he had personally visited the company and that the investment was safe, guaranteed, and insured by Lloyd's of London.

Ms. Wilson expressed concern about the penalties she would incur from the termination of the IL Annuity. However, Mr. Smith again assured her that she would make up the difference with the profits from the ATC investment. After this conversation, Ms. Wilson and Ms. Judson agreed to switch the investments from the Annuity to ATC. Ms. Wilson purchased 53 phones for $265,000 and Ms. Judson purchased 20 phones for $100,000. Plaintiffs received the monthly payments from January 2000 to January 2001. After this date the payments stopped.

---

1. Theresa Wilson v. Gregory Smith, Case No. 04–00003, United States Bankruptcy Court for the Middle District of Florida, Tampa Division. Tr. is in reference to the Transcript of the Final Evidentiary Hearing held on, October 19, 2004.

In May 2001, Mr. Smith volunteered to have a legal organization review the trust and estate plans created in 1992. Mr. Smith used an organization called Legacy Prepaid Legal Services. This organization recommended significant changes in the estate plan of Ms. Wilson and Ms. Judson. Mr. Smith charged Ms. Wilson and Ms. Judson $750 each, out of which Mr. Smith paid to Legacy $320, and kept the remaining balance for filling out all the required worksheets.

In mid 2001, Ms. Wilson inherited $67,000 worth of stock from her late husband's stepmother. Ms. Wilson arranged for Mr. Smith to liquidate her stock because Ms. Wilson did not like the high level of risk in the stock market. The transfer was done and $40,000 was placed in a variable annuity called American Legacy III, a product of Lincoln National Life. The rest was retained by Ms. Wilson. This investment was done through Clarke Lanzen Scalla money managers.

At some point in the end of the summer of 2001, Ms. Wilson and Ms. Judson attempted to exercise a "buy back" option of their ATC investment when they became alarmed due to the cessation of monthly payments. ATC filled for bankruptcy in the fall 2001. In October 2001, Ms. Wilson and Ms. Judson received correspondence from Thomas Lennon, Receiver for ATC appointed by the United States District Court in Oregon. Ms. Wilson and Ms. Judson were unable to recover any of their investment from the bankruptcy case of ATC.

Based on the foregoing, Ms. Wilson and Ms. Judson contend that they have an allowable claim in this Chapter 13 case of Mr. Smith in the total amount of $700,000 based on the several components outlined earlier. It should be noted at the outset that initial inquiry must be addressed to the legal basis of the claims asserted by Ms. Wilson and Ms. Judson.

As noted earlier, the claims under consideration are based on several legal theories, several of them not supported by this record. This Court is satisfied that this record fails to support any of the following theories advanced by Ms. Wilson and Ms. Judson; Violation of California Corporate Securities Law of 1968 (Count III), Violation of California Elder Abuse Act (Count IV), Violation of the Investment Advisor Act of 1940 (Count V), Fraud (Count VI), and Negligent Misrepresentation (Count VII). Therefore, these Counts should be dismissed.

This leaves for consideration the claims based on Professional Negligence (Count I) and Breach of Fiduciary Duty, Constructive Trust (Count II). Of course before one can consider a breach by one of a fiduciary duty it is essential to find that the party charged with the breach owed a fiduciary duty to the party charging the breach.

In the present instance, both Ms. Wilson and Ms. Judson were parties devoid of any financial sophistication. On the other hand, Mr. Smith claimed to be and, in fact, was a "financial advisor" who certainly possessed a far superior expertise concerning investments than either Ms. Wilson or Ms. Judson. Mr. Smith was fully aware of the financial conditions of both considering their age and their situation in life. Ms. Wilson was retired and Ms. Judson was working as an administrative assistant for a healthcare provider. Mr. Smith not only should have known but actually knew that Ms. Wilson and Ms. Judson could not afford to enter into a high risk investment and that the telephone scheme was, in fact, a high risk investment. Now we know that ATC investment was nothing more than a Ponzi scheme which, like all of them, is doomed to fail from the outset.

Be that as it may, ATC was placed into a receivership by the United States District Court of Oregon and ultimately ended up in the Bankruptcy Court, sealing the fate of all investors and the ultimate demise of the finances of all who were persuaded to purchase public phones from ATC in the age of cell phones.

Even to suggest and recommend, let alone persuade Ms. Wilson and Ms. Judson to invest their entire retirement assets in such a scheme, was while not fraudulent, certainly amounted to a breach of the fiduciary duty owed by Mr. Smith to Ms. Wilson and Ms. Judson. In addition, Mr. Smith was clearly a professional and, without doubt, failed to live up to even a modicum of reasonable care when he recommended the ATC investment to Ms. Wilson and Ms. Judson without conducting any meaningful due diligence. Mr. Smith claims his broker dealer investigated the soundness of the ATC through his CPA and determined it was not a security, which allowed him more flexibility as he sold it to his clients. There is not one iota of credible evidence in the record that Mr. Smith ever obtained any financial records, operating history, or empirical data on ATC operations. In sum, his conduct fell far below the standard of care required from a professional.

Based on the foregoing, this Court is satisfied that the Plaintiffs have met their burden of proof and should prevail on Count 1 (Professional Negligence) and Count II (Breach of Fiduciary Duty, Constructive Trust). Ms. Wilson and Ms. Judson have an allowable claim in the Chapter 13 case of Mr. Smith. Now that liability has been established on the claim of the Plaintiffs, the only remaining question is the amount of their claim.

Before considering the proper amount of the claim, it is necessary to determine how much is the claim of Ms. Wilson and how much is the claim of Ms. Judson. The estimation is complicated from the fact that the Complaint to Estimate the Claim was filed by Ms. Wilson, individually and as Trustee of the Wilson 1992 Trust, dated August 7, 1992; and by Ms. Judson, individually, and as Trustee of the Wilson 1992 Trust, dated August 7, 1992; and as Trustee of the Karen Mary Judson Separate Property Trust, dated June 17, 2001, yet the Proof of Claim was filed only by Ms. Wilson and Ms. Judson.

This Court believes that Ms. Wilson and Ms. Judson's estimated claim should reflect the amount of money they would have earned but for Mr. Smith's negligent recommendation to invest in ATC minus any money received from the annuities prior to its conversion. As a result, this Court is going to treat the Complaint to estimate as a request for declaratory relief. The claim of Theresa Wilson, individually and as Trustee of The Wilson 1992 Trust, dated August 7, 1992, shall be set at $449,850, which includes the money earned on the two annuities minus payments collected from the annuity and from the monthly payments received in the ATC scam. In addition, the claim of Ms. Judson, individually and as Trustee of the Wilson 1992 Trust, dated August 7, 1992, and as Trustee of the Karen Mary Judson Separate property Trust dated June 7, 2001, shall be set at $172,118 for the money she would had received in the annuity minus the payments made by ATC.

A separate final judgment shall be entered in accordance with the foregoing.

### FINAL JUDGMENT

THIS CAUSE came on for consideration upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered its Findings of Fact, Conclusions of Law, and

Memorandum Opinion. Therefore, it appears appropriate to enter this Final Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Final Judgment be, and the same is hereby, entered in favor of the Defendants, Gregory J. Smith and Deborah K. Smith, and against Plaintiffs, Theresa F. Wilson individually and as Trustee of the Wilson 1992 Trust, dated August 7, 1992, and Karen M. Judson, individually and as Trustee of the Wilson 1992 Trust and as Trustee of the Karen Mary Judson Separate Property Trust dated June 17, 2001, on Count III (Violation of the California Corporate Securities Law of 1968); Count IV (Violation of the California Elder Abuse Act); Count V (Violation of the Investment Advisors Act of 1940); Count VI (Fraud); and Count VII (Negligent Misrepresentation) and these Counts are dismissed with prejudice. It is further

ORDERED, ADJUDGED AND DECREED that Final Judgment be, and the same is hereby, entered in favor of the Plaintiffs, Theresa F. Wilson individually and as Trustee of the Wilson 1992 Trust, dated August 7, 1992, and Karen M. Judson, individually and as Trustee of the Wilson 1992 Trust and as Trustee of the Karen Mary Judson Separate Property Trust dated June 17, 2001, and against Defendants, Gregory J. Smith and Deborah K. Smith, as to Count I (Professional Negligence) and Count II (Breach of Fiduciary Duty, Constructive Fraud). The claim filed by Theresa F. Wilson and Karen M. Judson is hereby estimated to be in the amount of $449,850 for Theresa F. Wilson and in the amount of $172,118 for Karen M. Judson.